Mr. Van Alstyne comes before the court seeking some relief on a 25-year sentence for murder, not for large-scale narcotics conspiracy, but a white-collar case. He also comes before the court on a record where there was a deeply compromised verdict here. Those are two clues that I would suggest indicate that there are some problems with Mr. Van Alstyne. So white-collar crimes are less serious than other kinds of crimes? They're not less serious. All crimes are wrong. They're criminal. But I personally have never seen a 25-year case, a 25-year sentence on a white-collar case, on the largest Wall Street cases you hear about. Was that the basis for your request for relief here? No. It's just a point that... There's some who argue that that's an error, that we shouldn't be correcting it downward here. They should do it upward elsewhere. Well, we have raised several sentencing problems that are before the court, and I'll get to those. It might be a good idea to deal with the law as it applies. Yes, very well, Your Honor. And the law here on the amendment problem, the Fifth Amendment, I have indicated... I think the nub of the question is, is it a substantive amendment or a non-substantive amendment? And I've given three reasons why the amendment is intensely substantive on this record. Number one reason being that it increased the statutory maximum, 45 years, raising an apprendee issue. Number two, that it changed a list of non-crimes into crimes. That's about as substantive as you can get. And number three, I pointed out textually, the text break between count 10 and count 11. Each of those, the conclusion follows from that that this is a substantive amendment. Inside the law, the law is clear that you cannot stipulate to a substantive amendment of the indictment. The government apparently does not contest that point. And so if it's a substantive amendment, a stipulation for a substantive amendment is unavailing under the law. Mr. Van Alstyne is entitled to some relief under the Fifth Amendment. I think the case is controlled by Sterone. Sterone was obviously the case. Counsel, excuse me. You're referring to amendments. There's several amendments that went on. Would you be more specific for me? So I'd make sure I'm following and tracking specifically what amendments you're referring to in your argument. Yes. The First Amendment was the amendment of 10 to 19, adding the nine additional counts. That's where you get the Apprendi problem with the 45 additional years. The Second Amendment that we're referring to is on count 22, where they changed the name of Sandstone to American Gas Plant. That changed the entire tenor in theory of count 22. That's directly controlled by Sterone, where it was a change from interference with commerce in sand to interference with commerce in steel, changing the tenor. What was the change in tenor? What was the change in tenor between the change of the limited partnerships? It was incomprehensible. The theory was incomprehensible before the change because the victims in that case, the Easleys, had not even investigated Sandstone. So it was an opaque allegation. After that, after the change, then it was clear that they were talking about a hush money theory. So the hush money theory was really the nub of count 22, was totally opaque and hidden before the change. It was transparent after the change. That's a substantive change in these cases. So I believe that with regard at least to those changes, it would have been fairly easy for the government to go back before the grand jury. I had a case where this arose earlier this year, and the issue arose about a week before trial. They go to the grand jury, and it takes them about a day to do it. They didn't do it here. And so Mr. Van Alstyne was deprived of the substantial protections of why we have a grand jury. They're the true opposite of grand jury, which is that's how you start a case, and that has historical precedence in Syria. I think we understand that. The question I'm grappling with on the first one that you referred to where the indictment talks about counts 1 through 10, but then it has this listing of the counts 1 through 19, all listed as counts later on in the indictment. What's the difficulty from the defendant's standpoint in that? Well, the difficulty is that for the indictment, he was looking at 10 counts with the statutory maximum. What did you take? You were the trial lawyer? No, I was not. Okay. What would the lawyer think when he saw all these pages with counts 1 through 19? Why would he think that those weren't being included? Because the caption says 1 to 10. Because the caption said. It says 1 to 10. That's the first thing you look at. Sure, but it's not the only thing you look at. That's not the only thing you look at. Put it this way, Your Honor. I think it's clear what the government intended, and they probably had some kind of a mis-edit on this thing. That's not the question. The question is an objective looking at the piece of paper that was actually put before the grand jury. It's what the grand jury intended, not what the government intended. I'm sure. I think it was a sloppy edit by the government. And I'm not claiming that the government did not try to say 19 counts. It was a sloppy edit. But that's not what they did. But you feel that fundamentally affected his rights, however, by the fact that the front page heading says 10, but once you go beyond that front page with the heading and the names of the parties and you flip through page after page after page of counts labeled as such with specific instances of conduct alleged to have been engaged in by the defendant at that time or the appellant, that that would not be sufficient? No, Your Honor. And that's why I went into detail about the break between count 10 and count 11 and why 1 to 10 are qualifying mail fraud predicates for count 20 and then count 11. It's not that there is a clear break between count 10 and count 11. I mean, what I think happened is the government went back and they decided to try to hammer this guy harder, and they added these extra 10, but they did a sloppy job on the edit. And what they gave to the grand jury did not charge, as to counts 11 to 19, crimes. And what the grand jury returned, based on the piece of paper put before them, was not criminal charges on counts 11 to 19. And the problem is if we were just simply left with the government made the textual argument is that you have to look at them all the same and there's no discontinuity there. But there is. And it's clear that if you analyze the time frames and what qualifies as predicates for the money laundering and what doesn't, there's a clear discontinuity between count 10 and count 11. So it would not be improper or irrational for a careful lawyer reading this to say these guys screwed up. It looks like we're only charged with counts 1 to 10 and then 11 to 19. There's some garbage here about additional mailings of checks and certificates. And then we get back to the mean of the matter again when we get to count 22. A careful lawyer would pick that up. So it's not irrational to read it the way that we assert that it should be read. So you've got a big problem under the indictment clause of the Fifth Amendment as to the counts indicated. Now, as to the money laundering, counts 20 to 22, it's two interrelated problems of sufficiency. One, sufficiency of the evidence to support the conviction. Number two, sufficiency of the indictment. Taking the second problem first, which is we're back to the, now we're on the Sixth Amendment, notice of the charges. I would defy the government or anybody else to tell us which predicates mail fraud links up with which money laundering. The indictment is cryptic. It doesn't say it. It's impossible to tell. And the problem is it's impossible to have any assurance that Mr. Ben Alstein was not convicted on these money laundering counts based upon an acquitted or non-qualifying predicate. And that's the problem. And the government can't tell you which mail fraud predicate matched up with which money laundering. And the fact is that Mr. Ben Alstein was acquitted of, I believe, what, 11 of the 19 money laundering counts? So if you just look purely at the percentages, they either, most of them are either non-qualifying or acquitted predicates. And you get back, there's a, the problem here, and there's a direct quotation from the Russell case that I cited that I think hits this on the nose, which is United States v. Russell, 390, 369 U.S. at 766, where they talk about a cryptic indictment enabling the government to convict on one set of facts and then defend the conviction on another set of facts not found by the jury. Well, that hits it exactly on the nose where we're at right now. The jury, for whatever reason, acquitted Mr. Ben Alstein on the majority of the money laundering, excuse me, majority of the mail fraud counts. They dissected this thing and they said, Ben Alstein wins here, he loses here. He won on most of them. He lost on a few of them. And on this record, I don't think that you can show that the, there was a qualifying predicate. And that affects both the sufficiency of the evidence and the basic Sixth Amendment problem of the notice of the charges. The notice question is governed by the two criteria. The appraisal function of the indictment isn't satisfied because anybody looking at that cannot tell which mail fraud links up with which money laundering. So the appraisal function under the Sixth Amendment fails. And the jeopardy function, which is the second criterion under the Sixth Amendment sufficiency, fails likewise. What if somebody later is to charge Mr. Ben Alstein with another money laundering count based on one of these checks or one of these certificates? Does he have protection under the last verdict or not? Would he try it already? What if the, you don't know. If you don't specify the predicate, you've got no jeopardy protection. So the appraisal function of the Sixth Amendment fails and the jeopardy function fails. On the jeopardy issue, he would assert the judgment in defense, right? He would assert the judgment. And the judgment's wrong, right? It's going to go back. That's what we're asking for. Well, I think the government's conceded the $290 instead of $300 sentence, right? And that's part of the judgment, right? Correct. So we're going to have a new final judgment, right? Yeah, but the government is arguing for a limited remand only to that issue. Well, is that what it is or is it a new final appealable judgment? That's what I was getting around to. That's one question I have. I guess that depends on the relief ordered by this court. We ordered a reduction of 10 months, assuming that. I'm not saying that's all we'll give you, but I want to just address the sentence issue. Well, I think if I understood your hypothetical right, that would leave the conviction intact and an adjustment on the sentence. Right. So then, I mean, at that point, you still don't know. The problem is, the basic problem is you still have your right to go to the Supreme Court. You still have your right for a collateral review. Of course. But at the same time, you still don't know which predicate mail fraud links up with which money laundering. That's the problem. Does the defendant have to be present in court for that amended judgment from your point of view? It sounds like a critical stage to me. You're not stipulating that we could order a judgment modified without his presence. No, I wouldn't say that. I mean, I think that if the ‑‑I think you have ‑‑ You're not stipulating. You wouldn't say that? No. I mean, if it was limited to the question of just adjusting the sentence, I think you have the power to do that without him being here. But, obviously, we're asking for a lot more than that. I understand. As far as the ‑‑ So, just to come back to count 22, to avoid the issue that you're concerned about, the linkage, what should the indictment said with respect to count any of those three counts? I think it should have identified a specific mailing. So ‑‑ Or asked for a unanimity. I mean, I guess it could have identified one of them. Rather than just say generic mail fraud, the jury did go through count by count and delineate certain of the mailings. Was there any tracing? Just taking count 20 to make my question a little more precise. Count 20 alleges that on January 21st, 1994, he transferred approximately $6,750 from a BEC account at B of A to an account in the name of Sandstone. So they proved that, correct? They proved that that transfer took place. And what you're saying is, where did the $6,750 come from? Yes, or what is the mail for? Yeah, well, what is the mail for? The problem is, you've got the, if it was in any of the counts 11 through 19, those posts dated January 21, 1994, and so they could not qualify. So he was convicted, for example, on count 16, a check dated May 31, 1994. I mean, if they accepted that one, obviously then that verdict can't stand because that's an anachronism. You've got to have a preceding mail fraud count to qualify as the predicate. You can't have a predicate that doesn't even exist. So your construction of the law is that in order to have a money laundering count where the predicate is mail fraud, that the money transferred out has to be traced back to the specific money that came in as opposed to it being established that he engaged in a mail fraud that generated the funds that went into the account? I would say that. And the reason that that has to be the law is because of the large number of non-qualifying mail fraud counts that post dated the transfer. That those couldn't, he was charged with all this stuff, but those couldn't possibly be qualifying predicates because they post dated the money laundering. As far as his sentence. And he was acquitted of the post date. How many of the predated ones was he convicted on? He was convicted on four. So some of them. One, two, nine, and ten would have worked. He was convicted, as for the ones from counts 11 through 19, he was convicted on 11, 16, and 19. If they latched on to one of those, those don't work because it's an anachronism. I'm sorry. Certainly if they latched. I want to make sure. So just looking at count 20, if they had used one, two, nine, or ten, as the predicate, that would have been okay. Because he was convicted of those money laundering, excuse me, those mail fraud counts. Correct? That would have worked. And that predated the transfer. Let me finish. But what you're saying is, however, if they didn't use those, but instead used 11, 16, or 19, of which he was convicted, those post dated. So that wouldn't be right. And also, there's a bunch of acquitted counts, and if for some reason they used the predicate as one of the acquitted counts, that obviously doesn't work either. I mean, if he had been acquitted of, instead of most of them, all 19 of them, then we would have nothing to talk about. I mean, obviously you can't use an acquitted count as a predicate. Okay. So, well. You may want to save your remaining time for rebuttal. Thank you. May it please the Court. Robert McGann on behalf of the United States. Let me first begin with the argument that somehow the mail fraud counts for the indictment was substantively amended to add in eight additional counts of mail fraud. Let me be clear as to what happened here. The original indictment that was returned by the grand jury in 1998 clearly set forth one overarching scheme to defraud that began in April of 1992, continued until November of 1994, and had 19 separate mailings that were in furtherance of that one overarching scheme to defraud, which was a Ponzi scheme. That is clear from the indictment. What the defendant is attempting to do here is attach dispositive significance to a heading that erroneously put in the word 10. It should have had the word 19 to accurately reflect that there were 19 separate mailings that were in furtherance of the scheme to defraud. And I want to pick up on a question that Judge Fischer asked. Was it really unclear to the defendant and his counsel as to which they were going to have to defend against? The answer, of course, is no. If it is true that these were – that these were simply nine – that counts 11 through 19 were simply mailings that had no significance whatsoever, there should have been a motion to strike surpluses from the indictment. If it's true that these were meaningless, why wasn't there such a motion or why wasn't there such a motion to dismiss the indictment? And the answer is because it's clear that there were 19 separate and individual counts of mail fraud. There is nothing in Rule 7 of the Rules of Criminal Procedure which governs indictments. There is nothing in the cases that the defendant has cited which attaches dispositive significance to a mere heading. Clearly, the defendant had noticed, and his counsel had noticed, that he was defending against 19 counts, and that's clear from the fact that the defendant himself and his trial counsel agreed to a stipulation more than six months prior to trial recognizing that that was simply a typographical error with no substantive significance whatsoever. Let me turn to Count 22, if there are no questions on the mailings. Count 22 we respectfully submit was simply a correction of a typographical error. The fact of the matter is, is that the essential facts, the essential facts setting forth an offense of money laundering were in the original indictment. That is, the defendant engaged in a monetary transaction with the proceeds of specified unlawful activity with the intent and purpose of further promoting that specified unlawful activity. Count 22 makes clear that there was a transfer between two accounts within the Bank of America. The defendant had noticed that that is the charge against which he would have to defend, and it was clear from the discovery that was provided as the defendant and his trial counsel acknowledged that it was simply the recipient account was erroneously named. The original indictment said Sandstone. It should have actually said American Gas Fund. We respectfully submit that this case is no different than other cases in which this Court has held that a typographical change to an indictment is not a substantive amendment. Those cases are United States v. Neal, United States v. Akins, and United States v. Lim. There was no issue that the defendant failed to have proper notice as to the money laundering as to the essential facts of money laundering against which he was going to have to defend. If there are no questions with respect to Count 22, I'd like to turn to the question of sufficiency of the indictment specifically on mail fraud. The defendant argues that because certain individuals were not present and testifying at trial, therefore, there was insufficient evidence to show that these particular mailings were in furtherance of the mail fraud. That's not true. The government need not, as a practical matter, cannot, particularly in the circumstances of this case, which I'm going to turn to in a moment, it simply cannot call over 400 investors, each of which is going to testify to what is what exactly was said to them, the material misrepresentations or the omissions and the fraudulent deceptive practices which caused them to participate in this Ponzi scheme, which lasted for almost two and a half years. But the government proved at trial, through nine victim witnesses and several individuals who worked for the defendant's companies, is that false and deceptive practices were engaged, were used to induce investors to make investments. They were immediately given back their own money or the money of other investors with the purpose of inducing them to make further investments. And each of the counts of mail fraud on which the jury convicted goes to that return of money. In other words, it was part and parcel of a Ponzi scheme. There is no dispute that these mailings took place. There is no dispute that these distributions took place. But what the defendant is saying, you had to have those individuals get up there and testify that they relied upon a particular false statement. Again, that's not true. We proved, beyond a reasonable doubt, that there was one overarching Ponzi scheme that lasted for two and a half years. And the jury, viewing the evidence in the light most favorable to the government, could easily conclude that the distribution checks, the return of money for the purpose of inducing either those investors or other investors to further invest, was in furtherance of the scheme. Now, with respect to the money laundering, there's been a suggestion that somehow there's some kind of disconnect in the – that there has to be some sort of direct linkage between a money laundering count and a mail fraud count. Well, I'm going to cite one of the cases which defendants – which the defendant cites in his brief. That's the United States v. Jackson. It's a Seventh Circuit decision which clearly holds there is no requirement that the government do a precise or particularized tracing of the specified – of the proceeds of specified unlawful activity to any particular count. And in the context of this case, that's a burden that – that's a burden that the government could never meet. These are mailings that constitute the return of money that investors have put into these foil and limited gas partnerships. Incidentally, we didn't put these citations in our brief. I apologize for that, but I have two citations from this Court which also stand for the proposition that in the context of a money laundering charge, the government need not trace to a particular count in the indictment. This Court's decision in the United States v. Garcia and this Court's decision in the United States v. English, and I'll be happy to provide those citations. But this Court has before it the citations to U.S. v. Jackson, which clearly holds that to be the case. Now – Kennedy. Well, we – we usually prefer our own circuits to the – Waxman. That's correct, Your Honor, and I agree with that. Those cases should have been cited in this brief. Now, with respect to this issue of somehow there being a disconnect and that the jury may have convicted on, quote, nonqualifying mail fraud counts, again, that doesn't make sense. This was a case where there was one overarching scheme to the fraud, and I believe it was Judge Fischer, if it was one of the other judges, I apologize, that pointed out that there is no dispute that the defendant was properly convicted on counts 9 and 10. Those mailings took place on January 20, 1994. Each and every count of mail fraud succeeds January of 1990 – January 20, 1994. So what the jury properly could have and may well have done in this case is concluded, absolutely, there was a scheme to the fraud that began in April of 1992. As of October of 1993, counts 1 and 2, that became a Federal crime because the mails were used. The scheme continued. There were proceeds of specified unlawful activity, i.e., coming from this one overarching Ponzi scheme and beginning in January and again in June and again in November, the defendant used the proceeds of that specified unlawful activity with the intent and purpose of further promoting the mail fraud scheme, which he had been running since April of 1992. Quite simply, there is no discontinuity issue here. There is a direct linkage. The mail fraud counts follow in time mail fraud counts, which are undisputably proper, and the defendant is not asking that they be reversed. Let me turn to the issue of sentencing, if there are no further – if there are no questions on the sufficiency of the evidence. This is not an issue we raised in our brief, and I apologize to this Court for that, but the Court need not actually address the sentencing errors that are raised by the defendant. And here is why. Those sentencing errors only go to the calculation of a base offense level for the fraud counts. But when you actually look at the PSR, and the relevant citation is at Appellant's Excerpt of Record 237 and 238, the total offense level was 37 based upon the money laundering counts under 2S1.1. And that total offense level of 37 was arrived at by a base offense level of 23, an eight-level enhancement for finding that approximately $7.5 million was illegally laundered, a four-level enhancement for organized or leader, and a two-level enhancement for vulnerable victims. Not one of those factual findings or not one of the application of those guidelines is challenged. With respect to the fraud count, there was no multiple count adjustment. What the PSR finds is that the fraud counts arrive at 27, the money laundering counts arrive at 37. Because of the wide disparity, there was no multiple count adjustment. So the sentence stands on the total offense level of 37 as determined solely by the money laundering counts. Even if this Court were to find that the defendant was wholly correct, which he's not, incidentally, and I'll address that in a moment, that somehow the fraud guidelines that were applied should not have, it wouldn't make any difference. He's still going to be at level 37. He's still going to get a 291 sentence. The sentence will stand. But having made that observation, and I, again, we should have made that in our brief, the defendant is simply wrong. Judge Stotler appropriately applied the guidelines. She made the appropriate factual findings. The evidence shows in this case that the actual fraud loss exceeded $10 million. What's important in a case such as this, a Ponzi scheme case, as this Court held in United States v. Munoz, you look at the amount of money that was placed at risk. It doesn't matter if some of that money actually went back to the defendants. In a Ponzi scheme, correction, to the investors. In a Ponzi scheme, one is going to anticipate that. But what happened here is that more than $10 million was placed at risk. With respect to the four-level enhancement, we're finding that the defendant derived a gross gain of more than a million dollars that affected a financial institution. The evidence was ample that that occurred. The defendant's only argument that that could not apply is that because some of the income which he gained during the timeframe in question actually came from legitimate business. As this Court's predicate upon the operation of illegal enterprises, you do not carve out that legitimate income. That is what happened here. The fact of the matter is that the defendant's companies, Coastline Financial, Merchants Bank, Liberty Energy Management, whatever legitimate income may have been derived was part and parcel dependent upon his operation of 13 fraudulent oil and gas-limited partnerships and the fleecing of more than 400 investors of over $10 million. If this panel has no more questions . . . What about the questions, Judge Beazer, posed on the corrective sentence, assuming since it appears the Court did, in fact, pronounce an oral sentence of 290 months which is in full? The specific question, Judge Fischer, as to whether a defendant needs to be . . . Well, no, whether you are . . . you do agree that that needs to be corrected. Absolutely. It's a 290-month sentence. And that can simply be an order, a limited remand. If we don't agree with any of the other arguments advanced by the defendant, technically we can send it back for just a correction. For a correction of the sentence, that's correct. The defendant would be barred by either res judicata or estoppel from attempting to relitigate what I hope will be this Court's affirmance of the conviction. And in all other respects, the application . . . get a new judgment entered on that remand, bring the case back to the Ninth Circuit, then have us issue the mandate so that there's only one further appeal from this judgment, that is, to the Supreme Court or collateral review. So we foreclose any other pre-sentence issue if we get this modified sentence in affirmative. Right? I believe that logistically that would be the correct way to handle this. That mandate should . . . Does the defendant have a right to be present for that imposition of sentence? I'll be honest . . . Does he have a right to raise any other objections to the pretrial report that have been raised here? Not at this point, Your Honor. Whatever objections could have been made have been waived. Either they were . . . So that's the limitation we spell out then in the mandate? That's correct, Your Honor. Simply to make a typographical correction to the judgment, which should say 290 months. So you think it's a ministerial thing and that he need not be present? I believe that to be correct, Your Honor, but I don't have authority for that proposition. Okay. And you're not making a concession on the part of the government that it is or isn't the correct? I'm sorry, Your Honor. I didn't hear the question. You're not making a concession on the part of the government that it is either a correct or an incorrect. You just don't know. I really don't know, Your Honor. Okay. But you do agree that it is 290, not 300, based on the warrant? That is absolutely correct, Your Honor. The district court made no findings warranting an upward departure. The outside parameter of total offense level 37 in criminal history 2 was 293. And I think as we cited in our brief, it's an oral pronouncement of sentence that should be in control. Thank you very much. Thank you. Yes, just three brief points. First, counsel talked about on the amendment issue, it's clear what was in the mind of the defendant, what was in the mind of the government, what was in the mind of defense counsel. That misses the point. The question is what was in the mind of the grand jury based on the piece of paper placed before them. Second, there was some discussion about the linkup and whether or not that's a problem. This same problem was raised recently in a case authored by Judge Fisher on the importation problem. The problem is when the importation counts failed, there was no showing that on the CCE conviction it didn't go to one of the nonqualifying importation counts. And so there was a remand to the district court to make a determination whether that linkup was there or not. We're in the same position here. Is there authority for the proposition that you advanced and the government refutes, is that there has to be specific tracing? Do you have a case that says that? That's what happened in the Cabocon case. Well, all right. Beyond Cabocon. I'm familiar with that, and we'll take a look at your argument, of course. Any other case appropriate to the mail fraud? Excuse me. I want to make sure my question is clear. Cabocon is a question of reinterpretation or interpretation by this Court of the law, underlying law, so there's a question there. I'm talking, do you have a case that addresses the issue of the linkage between a money laundering charge that is based on mail fraud in the same action where there is this linkage problem where you're saying that the government must trace specific alleged mail fraud to the money laundering count, such that for count 20 they would have had to, say, trace it back to some particular? I do not. As a matter of logic, it would have to work that way. Well, that's okay. I just want to understand. Because they've cited some cases, and I didn't know if you had any other cases. No, Your Honor. Thank you. And with reference to the Neeson Black case mentioned by counsel, what actually happened in that case is that they did not count the $500,000 base salary of Mr. Neeson. Okay. We have that in the briefs, and you're into your time now. Thank you. All right. Thank you. The case I just argued is submitted, and, again, I do thank counsel for argument. We'll stand in recess for about 10 minutes. All right.
judges: Beezer, Fisher, England (E. Cal.)